IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANDRE' DREW, #00663-000, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 19−cv–00285−JPG |
| | ) |
| VANORD, | ) |
| WALLACE, | ) |
| THOMPSON, | ) |
| BYRAN, | ) |
| TRUE, and | ) |
| USP MARION, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Andre' Drew, an inmate who is currently incarcerated at the United States Penitentiary located in Marion, Illinois ("USP-Marion"), brings this action for alleged violations of his constitutional rights by persons acting under the color of federal authority, *see Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb – 2000bb-4 (West 2019), and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc-1 – 2000cc-5 (West 2019). Plaintiff seeks declaratory judgment, monetary damages, and injunctive relief.

This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for

1

money damages from a defendant who by law is immune from such relief, must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* Complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

Plaintiff makes the following allegations in his Complaint: Plaintiff, who practices the religion of Islam, has been praying in the leisure center and the recreation yard for the twenty-one months that he has been incarcerated at USP-Marion. (Doc. 1, p. 13). On January 24, 2019, following noon prayer, Recreation Officer Vanord informed him that he was not allowed to pray in the facility's leisure center or any other recreation area anymore. *Id.*, p. 5, 7, 13. Plaintiff went to the office of the Recreation Supervisor Wallace who told him that the institution and the Bureau of Prisons had a policy that restricted Muslim prayer to the chapel and the inmate's cell. *Id.*, pp. 5, 7, 13, 24. Plaintiff met with Wallace again on February 11, 2019, and during this meeting Wallace told Plaintiff that he would be willing to release Muslim inmates from the recreation areas to go back to their cells or the chapel to pray. *Id,* pp. 5, 16. Plaintiff claims that this allowance still denies Muslim inmates the ability to fully participate in recreation activities such as educational classes and movie viewings because inmates are given specific time frames in which to move "out-bound" to education, recreation, and work details, and once this time frame is over all destination points are locked down and inmates can no longer enter these programs. *Id.,* p. 17. Muslim inmates, such as Plaintiff, are forced to choose between staying in the recreation areas and abandoning the practice of obligatory prayer or shortening the available recreation time to go back to their cell to perform prayer, unable to return to finish the activity, which effectively denies them participation in activities available to other inmates. *Id.,* pp. 14, 17.

Plaintiff tried on multiple occasions to meet with the G-Unit Counselor Thompson, the staff person responsible with providing, investigating, and responding to informal resolution requests, to obtain and file an informal resolution form challenging the prayer policy. *Id.,* pp. 8-10, 12, 20, 26, 27. When Plaintiff tried to meet with him, however, Thompson was never in his office. *Id.* During one attempt, staff told Plaintiff "good luck finding him." *Id.,* p. 26. Other inmates also told Plaintiff that Thompson is never in his office and that Plaintiff would "be lucky to get in contact with him." *Id.,* pp. 8, 20, 26. Plaintiff was given an informal resolution form by the G-Unit Manager, Byran, *Id.,* pp. 5, 8, 26, and turned in the form to another Unit Manager, but as of February 13, 2019, he had not heard a response or determination regarding his request or met with Thompson. *Id.,* pp. 5, 9, 10. He also emailed Warden True about being denied the opportunity to pray and the inability to meet with Thompson, but received no response. *Id.* pp. 26-27. Plaintiff alleges that because Thompson deliberately makes himself inaccessible to the inmate population and Byran fails to properly supervise the Unit team members, his First Amendment right to access the institution's grievance procedure has been violated. *Id.,* pp. 5, 12, 18.

**Preliminary Matters**

Plaintiff attempts to bring claims against USP-Marion, however, for constitutional claims brought under *Bivens*, the Religious Freedom Restoration Act ("RFRA"), or the Religious Land Use and Institutionalized Persons Act ("RLUIPA") USP-Marion is an improper defendant in this case. A *Bivens* action is a mechanism to seek redress for constitutional violations perpetrated by *persons* acting under the color of federal authority. *See Janis v. U.S.* 162 F. App'x 642, 644 (7th Cir. 2006); *King v. Federal Bureau of Prisons*, 415 F.3d 634, 636 (7th Cir. 2005). While, for the

3

purposes of implementing any injunctive relief[1] that is ordered under RFRA or RLUIPA, Plaintiff has already included Vanord, Wallace, and True. Plaintiff has not stated in what capacity he brings claims against Vanord, Wallace, and True under the RFRA or RLUIPA and so the Court presumes official capacity. *See Yeksigian v. Nappi*, 900 F.2d 101, 104 (7th Cir. 1990)(when a complaint fails to specify the capacity of an individual defendant, the court presumes the person to be named in an official capacity). Therefore, USP-Marion is dismissed without prejudice.

Additionally, Plaintiff claims that the policy prohibiting prayer in certain areas violates the religious freedom of all Muslim inmates at USP-Marion. (*See* Doc. 1, pp. 14, 21). However, Plaintiff is only entitled to assert his own rights. *Massey v. Helman,* 196 F.3d 727, 739-40 (7th Cir. 1999). Thus, the Court will only consider the alleged harms to Plaintiff, not to the inmate population generally.

## **Discussion**

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into four counts.

> **Count 1**: First Amendment free exercise of religion claim against Vanord, Wallace, and True for enforcing a policy against Plaintiff that prohibits Muslim prayer in recreational areas.
>
> **Count 2**: Fifth Amendment equal protection claim against Vanord, Wallace, and True for enforcing a policy which denied Plaintiff the ability to participate in recreational opportunities available to other inmates not practicing Islam by prohibiting Muslim prayer.
>
> **Count 3**: Religious Freedom Restoration Act (RFRA)/Religious Land Use and Institutionalized Persons Act (RLUIPA) claim against Vanord, Wallace, and True for enforcing a policy against Plaintiff that prohibits Muslim

---

[1] Although damages are available under RFRA and RLUIPA against government officials in their individual capacities, Plaintiff only seeks injunctive relief, Doc. 1, p. 6. *See Agrawal v. Briley,* No. 02-c-6807, 2006 WL 3523750 (N.D. Ill. Dec. 6, 2006)(allowing claims against government employees in their individual capacities) (citing *Mack v. O'Leary*, 80 F.3d 1175, 1177 (7th Cir. 1996)(citations omitted); *see also Nelson v. Miller*, 570 F.3d 868, 886 (7th Cir. 2009) (The Seventh Circuit has held that RFRA entitles a prisoner to sue prison officials in their individual capacities).

> prayer in recreational areas.

**Count 4:** Fifth Amendment Due Process and First Amendment claim against True, Thompson, and Byran for denying Plaintiff access to USP-Marion's grievance procedure.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pleaded under the *Twombly*[2] pleading standard.**

### Count 1

As to Plaintiff's First Amendment free exercise of religion claim, Plaintiff cannot bring this type of claim against federal officials pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) in light of the Supreme Court's recent decision in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017). *Ziglar* suggests that the only valid contexts for constitutional claims against federal officers are those previously recognized by the Court under the Fourth, Fifth, and Eighth Amendments. *See Bivens* 403 U.S. at 397 (Fourth Amendment unreasonable search and seizure); *Davis v. Passman,* 442 U.S. 228 (1979) (Fifth Amendment gender discrimination); *Carlson v. Green*, 446 U.S. 14 (1980) (Eighth Amendment deliberate indifference to medical needs). The Supreme Court held that federal courts should not expand *Bivens* actions to reach contexts that the Supreme Court has not officially recognized unless "special factors" counsel otherwise. *Ziglar*, 137 S.Ct. at 1859-60. Plaintiff's First Amendment claim does not fit under any of the three scenarios recognized by *Bivens;* nor are there any "special factors" in this case that would urge expanding *Bivens* here. Further, the Supreme Court has stated, "[w]e have never held that *Bivens* extends to First Amendment claims." *Reichle v. Howards*, 566 U.S. 658, 663 n.4

---

[2] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

(2012). This Court has also recently declined to extend *Bivens* to First Amendment claims. *Borowski v. Baird*, Case No. 16-cv-848-JPG, 2018 WL 6583976 (S.D. Ill. Dec. 14, 2018); *White v. Inch*, Case No. 17-cv-1059-JPG, 2018 WL 6584899 (S.D. Ill. Dec. 14, 2018). In fact, "[n]ationwide, district courts seem to be in agreement that, post-*Abassi*, prisoners have no right to bring a *Bivens* action for violation of the First Amendment." *Harris v. Dunbar*, Case No. 17-cv-536-WTL, 2018 WL 3574736, at * 3 (S.D. Ind. July 25, 2018). Consistent with the Court's previous rulings, the Court declines to extend *Bivens* to Plaintiff's First Amendment Claim. Thus, Count 1 is dismissed without prejudice.

**Count 2**

Plaintiff is allowed to bring an action under *Bivens* "to redress a violation of the equal protection component of the Due Process Clause of the Fifth Amendment." *Ashcroft v. Iqbal,* 556 U.S. 662, 675 (2009) (citing *Davis*). In a Fifth Amendment[3] equal protection claim*,* a prisoner must show that he is treated differently than similarly-situated inmates based upon either a suspect classification or a fundamental right. *McNabola v. Chi. Transit Auth.,* 10 F.3d 501, 503 (7th Cir. 1993). Religion is a suspect classification. Plaintiff must then show that the decision at issue was motivated by intentional or purposeful discrimination. *McNabola,* 10 F.3d at 513. Prison officials may restrict the religious practices of inmates only if a deprivation is necessary to further legitimate penological interests. *See Iqbal*, 556 U.S. at 676-677.

Plaintiff claims that the policy restricts "Muslim prayer to the chapel and the Muslim inmate's cell." (Doc. 1, p. 13). Because he alleges that the policy specifically applies to Muslims and not generally to inmates of any religion who might pray during recreational times, Count 2

---

[3] Plaintiff states that Defendants have violated his rights under the Fourteenth Amendment, Doc. 1, p. 14, but because he is a federal prisoner, the applicable basis for his claim is the equal protection principles read into the Fifth Amendment. *See, e.g., Markham v. White*, 172 F.3d 486, 491 (7th Cir. 1999).

survives screening as to Defendants Vanord and Wallace, in their individual capacities, who enforced the policy. (Doc. 1, p. 6).

Count 2 cannot, however, proceed against Warden True. "[A] defendant cannot be liable under *Bivens* on the basis of respondeat superior or supervisory liability, rather, there must be individual participation and involvement by the defendant." *Arnett v. Webster,* 658 F.3d 742, 757 (7th Cir. 2011). Other than sending an email to Warden True, Plaintiff fails to claim any facts of personal misconduct or knowledge. Because his alleged liability is based solely on his position as the warden, he shall be dismissed without prejudice from Count 2.

## Count 3

Under the Religious Freedom Restoration Act,[4] the government "shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1 (West 2019). A substantial burden is one that "bears direct, primary, and fundamental responsibility" for rending a religious exercise "effectively impartible." *Korte v. Sebelius*, 735 F.3d 654, 682 (7th Cir. 2013). Furthermore, the Supreme Court has held that a government imposes a substantial burden when it "puts substantial pressure on an adherent to modify his behavior and violate his beliefs." *Thomas v. Review Bd.*, 450 707, 718 (1981). To make out a claim, the Plaintiff need only show an honest conviction, not a correct interpretation, of his religious obligation. *Id.* at 683.

At this stage, Plaintiff's claim that the policy prohibiting prayer in recreation and leisure

---

[4] The RLUIPA and the RFRA are sister statutes. The RLUIPA was enacted to apply to States and their subdivisions after the Supreme Court held in *City of Boerne v. Flores*, 521 U.S. 507 (1997) that Congress exceeded its powers in making the RFRA applicable to the States and their subdivisions. *Holt v. Hobbs*, 135 S.Ct. 853, 859-860 (2015). The statutory language of the RLUIPA regulating religious exercise by institutionalized persons, 42 U.S.C. § 2000cc-1, mirrors that of the RFRA. *Id.* at 860. Because Plaintiff does not make allegations against a state, county, or municipality, the Court will address his claims regarding burdens on his freedom of religion under the RFRA.

areas substantially burdens the practice of his religion, which requires prayer five times a day, survives screening. Therefore, Count 3 shall proceed against Vanord, Wallace, and True.

## Count 4

"Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause" of the Fourteenth Amendment. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). As such, the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens* 635 F.3d at 953 (citing *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Grieveson v. Anderson.* 538 F.3d 763, 772 n.3 (7th Cir. 2008); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)). Plaintiff claims that Defendants denied him access to the institution's grievance procedure, but the denying or mishandling of grievance processes, standing alone, does not state a claim. Accordingly, Count 4 is dismissed without prejudice.

## **Pending Motions**

Plaintiff requests a permanent injunction and declaratory judgment in the Complaint (Doc. 1, p. 6) and in a separate Motion for Declaratory Judgment. (Doc. 3). Because a separate motion requesting relief is unnecessary, the Clerk is **DIRECTED** to terminate the Motion as **MOOT**. Plaintiff's request for this relief will still be addressed by the Court based on Plaintiff's request in the Complaint.

## **Disposition**

**IT IS HEREBY ORDERED** that **COUNTS 1** and **4** are **DISMISSED** without prejudice for failure to state a claim. Because there are no further claims against **Thompson** and **Byran,** they shall be **DISMISSED** without prejudice from this action.

**IT IS FURTHER ORDERED** that **COUNT 2** shall proceed against **Vanord** and

**Wallace**. **True** is **DISMISSED** without prejudice as to **COUNT 2**.

**IT IS FURTHER ORDERED** that **COUNT 3** shall proceed against **Vanord, Wallace,** and **True**.

**IT IS FURTHER ORDERED** that **USP-Marion** is **DISMISSED** without prejudice from this action**.**

The Clerk is **DIRECTED** to terminate **USP-Marion, Thompson,** and **Byran** as defendants in the Court's Case Management/Electronic Case Filing ("CM/ECF") system and to terminate as **MOOT** Plaintiff's Motion for Declaratory Judgment (Doc. 3).

The Clerk of Court shall prepare for Defendants **Vanord, Wallace,** and **True** (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Plaintiff.  If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, if a defendant can no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his or her last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

**IT IS FURTHER ORDERED** that this entire matter be **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(3) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral*.

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**
**DATED: June 10, 2019**

                                                        s/ J. Phil Gilbert
                                                        **J. PHIL GILBERT**
                                                        **United States District Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.**