**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **ANDRE' DREW, #00663-000,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 19-cv-00285-JPG** |
| | ) | |
| **MR. VANORD,[1]** | ) | |
| **MR. WALLACE,** | ) | |
| **and MR. TRUE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM & ORDER

**GILBERT, District Judge:**

This matter is now before the Court for consideration of Defendants' Motion for Summary Judgment (Doc. 31). Defendants seek dismissal of all claims against them based on Plaintiff's failure to exhaust all available administrative remedies before filing this suit. (*Id.*). For the reasons set forth below, the motion is **GRANTED**.

### INTRODUCTION

Plaintiff Andre' Drew filed this action for alleged violations of his federally protected rights by persons acting under color of federal authority pursuant to *Bivens v. Six Unknown Names Agents*, 403 U.S. 388 (1971) and the Religious Freedom Restoration Act (RFRA), 42 U.S.C. §§ 2000bb-2000bb-4. He claims that officials at the United States Penitentiary located in Marion, Illinois (USP-Marion), implemented a rule prohibiting Muslim inmates from praying in the recreational room during leisure time, thereby forcing him to choose between his religious practice

---

[1] Plaintiff identified this individual as "Mr. Vanord" in the Complaint and Amended Complaint. (Docs. 1 and 23). However, the defendant identified himself as "Mr. Vannoy," and Plaintiff has since adopted this spelling of the defendant's name. (*See* Docs. 31 and 32). Consistent with both parties' reference, the Clerk of Court shall be **DIRECTED** to substitute **VANNOY** in place of **VANORD** in CM/ECF, and the Court will refer to this defendant as Vannoy in this Order.

and other recreational or educational activities.  (Docs. 1 and 23).  Following screening of the Amended Complaint (Doc. 23), Plaintiff was allowed to proceed with a Fifth Amendment equal protection claim (Count 2) and a Religious Freedom Restoration Act (RFRA) claim (Count 3) against Defendants Vannoy, Wallace, and True.  (Doc. 22).

On September 20, 2019, Defendants filed a Motion for Summary Judgment seeking dismissal of Plaintiff's claims for failure to exhaust his administrative remedies.  (Doc. 31).  Defendants assert that Plaintiff filed suit before attempting any formal resolution of this matter.  (*Id.*).  Plaintiff filed a *pro se* Response in opposition to the motion on October 7, 2019.  (Doc. 32).  There, he claims that the lack of response to his informal grievances relieved him of the obligation to seek formal resolution of the matter by rendering the Federal Bureau of Prison's (BOP) Administrative Grievance Program at USP-Marion unavailable.  (*Id.*).

### RELEVANT FACTS

The following facts are taken from the record and presented in the light most favorable to Plaintiff, who is the non-moving party.  All reasonable inferences are drawn in his favor.  *See Ricci v. DeStefano*, 557 U.S. 557, 585 (2009).

### A.    Plaintiff's Religious Practice

Plaintiff is a Muslim inmate who is currently housed at the United States Penitentiary located at Marion, Illinois (USP-Marion).  He actively practices Islam by praying five times daily.  During the twenty-one months preceding this action, he prayed in USP-Marion's leisure center and recreation yard on a daily basis.  This changed on January 24, 2019, when Recreation Officer Vannoy informed Plaintiff that he was prohibited from praying in both locations going forward.

The same day, Plaintiff spoke with Recreation Supervisor Wallace about the matter.  He learned that Warden True adopted a policy restricting Muslim prayer to the prison chapel and

inmate cells.  Wallace later informed Plaintiff that he would be willing to release Muslim inmates from recreation areas in order to pray in their cells or the chapel during leisure time.  Plaintiff maintains that this put Muslim inmates in the position of choosing between their religious practice and other recreational and educational opportunities.

## B.    Plaintiff's Exhaustion of Administrative Remedies

Plaintiff attempted to resolve the issue informally.  On January 24, 2019, he tried to speak with G-Unit Counselor Thompson, but he could not find the counselor.  (Doc. 23, pp. 5-6; Doc. 32, pp. 1-3).  On or around January 25, 2019, he obtained an informal resolution form (BP-8) from G-Unit Manager Bryan and submitted the completed BP-8 to Thompson on January 28, 2019, and Byran on February 6, 2019.  (Doc. 32, pp. 12-14, ¶¶ 3, 5).  In the meantime, he also emailed Warden True about the prayer restriction.  (*Id*. at ¶ 4).  Plaintiff received no response to these communications before filing suit.  (*Id*.).

## DISCUSSION

## A.    Summary Judgment

Summary judgment is appropriate only if the moving party can show "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *Celetex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party has the burden of establishing that no material facts are genuinely disputed.  *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004).  Any doubt about the existence of a genuine issue must be resolved in favor of the nonmoving party.  *Id*.  On summary judgment, the district court's role is generally not to weigh evidence or judge witness credibility.  When deciding a motion for summary judgment on the issue of exhaustion, however, the Seventh Circuit explains that a different standard applies. *Pavey v. Conley*, 544 F.3d 739, 739-41 (7th Cir. 2008).  The court decides contested issues

regarding exhaustion and makes limited findings of fact. *Id*. In this case, the material facts are not in dispute. *See Doss v. Gilkey*, 649 F. Supp. 2d 905, 912 (S.D. Ill. 2009) (no hearing required where there are "no disputed facts regarding exhaustion, only a legal questions").

## B.    Administrative Exhaustion

Plaintiff is an inmate who is in BOP custody. His status as an inmate subjects his claims to the Prison Litigation Reform Act (PLRA). Under the PLRA, prisoners are required to exhaust all available administrative remedies before filing suit. *See* 42 U.S.C. § 1997e(a). The statute explicitly provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. This exhaustion requirement is applicable to federal and state inmates alike. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). The purpose of the exhaustion requirement is to give prison officials an opportunity to resolve inmate complaints without judicial intervention. *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 537 (7th Cir. 1999) (exhaustion serves purposes of "narrow[ing] a dispute [and] avoid[ing] the need for litigation."). On the issue of exhaustion, Defendants have the burden of proof. *Westefer v. Snyder*, 422 F.3d 570, 577 (7th Cir. 2005).

The exhaustion requirement is mandatory. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006); *McNeil v. United States*, 508 U.S. 106, 111, 113 (1993) (Courts are "not free to rewrite the statutory text" when Congress has strictly "bar[red] claimants from bringing suit in federal court until they have exhausted their administrative remedies."). The Seventh Circuit requires strict compliance with the requirement. *Doe v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Proper exhaustion requires a prisoner to file complaints and appeals in the place, at the time, and in the manner required by the prison's administrative rules. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir.

2002).  Failure to properly exhaust all available remedies before filing suit is grounds for dismissal

of the lawsuit.  *See Pavey*, 544 F.3d at 741 ("Until the issue of exhaustion is resolved, the Court

cannot know whether it is to decide the case or the prison authorities are to."); *Perez*, 182 F.3d at

535.

      To exhaust administrative remedies at USP-Marion, federal prisoners must use the BOP's

Administrative Remedy Program described in 28 C.F.R. §§ 542.10-.19, along with institution-

specific supplemental procedures.  In its normal course at USP-Marion, the grievance process

involves four steps:

| Step 1: | The inmate must attempt informal resolution.  28 C.F.R. § 542.13.  At USP-Marion, this means addressing the issue with the inmate's counselor and completing an informal resolution form, called a BP-8; |
|---|---|
| Step 2: | If informal attempts do not resolve the grievance, the inmate must submit a formal Administrative Remedy Request on a BP-9 form within 20 calendar days of the event or injury giving rise to the complaint.  28 C.F.R. § 542.14.[2]  The Administrative Remedy Request must be answered by the warden of the institution where the inmate is located.  *Id.*; |
| Step 3: | If the inmate is not satisfied with the Warden's response to the Administrative Remedy Request, the inmate may appeal the Warden's decision to the appropriate Regional Director using a BP-10 form submitted within 20 calendar days of the Warden's response date. 28 C.F.R. § 542.15; |
| Step 4: | If the inmate remains dissatisfied with the Regional Director's response to the appeal, the inmate may appeal once more to the BOP General Counsel using a BP-11 form submitted within 30 calendar days of the Regional Director's response.  28 C.F.R. § 542.15.  An appeal to the BOP General Counsel is the final step in the administrative review process, and the inmate's remedies are deemed exhausted when he receives a response from the BOP General Counsel or upon the expiration of the General Counsel's response time. |

---

[2] USP-Marion's Institution Supplement provides: "If informal resolution cannot be obtained, the inmate may request a Request for Administrative Remedies Form . . . (BP-9) from his Counselor.  If an inmate previously refused to attempt to informally resolve a complaint, staff will still provide the inmate a formal request (BP-9)." (*See* Doc. 31-2, MAR-1330.18B—Marion Institution Supplement: Administrative Remedy Program, Drew 000023).

BOP regulations specify the response time for Administrative Remedy Requests and Appeals. 28 C.F.R. § 542.18. A warden must respond to an Administrative Remedy Request within 20 calendar days; a Regional Director must respond to an appeal within 30 calendar days; and the General Counsel must respond to an appeal within 40 calendar days. *Id*. BOP staff may extend the deadlines after notifying the inmate in writing. *Id*. If the designated BOP employee fails to timely respond, the inmate "may consider the absence of a response to be a denial at that level." *Id*. A federal prisoner may file a lawsuit only after he exhausts all available administrative remedies. *See* 42 U.S.C. § 1997e(a).

**C.    Analysis**

Based on the evidence in the record, the Court finds that Plaintiff failed to exhaust his administrative remedies before filing suit. Plaintiff admittedly filed an informal grievance on a BP-8 with Counselor Thompson and Unit Manager Byran. (Doc. 23, p. 4; Doc. 30, p. 2; Doc. 32, pp. 12-14). He separately emailed the warden. (Doc. 23, p. 4; Doc. 32, pp. 12-13). When he received no response to his informal complaints, Plaintiff filed suit.

In other words, Plaintiff's efforts to exhaust his administrative remedies began and ended with the informal resolution process described in Step 1. When he received no response to his BP-8, Plaintiff did not commence the formal grievance process by filing a BP-9, BP-10, or BP-11, or otherwise. He filed this lawsuit.

Plaintiff argues that the lack of response to his informal complaints rendered the grievance process unavailable. It is true that the PLRA's exhaustion requirement hinges on the availability of administrative remedies. *Ross v. Blake*, -- U.S. --, 136 S. Ct. 1850, 1858 (2016). An inmate "must exhaust available remedies, but need not exhaust unavailable ones." *Id*. The United States Supreme Court has adopted a definition of "available" that means "capable of use for the

accomplishment of a purpose" and that which is "accessible or may be obtained." *See Booth v. Churner*, 532 U.S. 731, 737-38 (2001) (internal quotations and citations omitted). In this context, an inmate is required to exhaust "those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 136 S. Ct. at 1859 (citing *Booth*, 532 U.S. at 738).

Three circumstances typically render a prison's grievance process unavailable because it is not capable of use to obtain relief. *Ross*, 136 S. Ct. at 1859. First, an administrative procedure is unavailable when it operates as a simple dead end, despite what the regulations or guidance materials may state. *Id*. (citing *Booth*, 532 U.S. at 736, 738) ("[W]here the relevant administrative procedure lacks authority to provide relief," the inmate has "nothing to exhaust."). This commonly occurs when an administrative official has apparent authority and refuses to exercise it or when a grievance handbook directs an inmate to submit his grievance to an administrative office that disclaims any capacity to consider the grievance. *Ross*, 136 S.Ct. at 1859. Second, an administrative scheme might be so confusing that it is incapable of use. In other words, a grievance process exists, but no ordinary inmate can understand or navigate it. *Id*. Finally, a grievance process is unavailable when prison officials thwart an inmate's efforts to exhaust his administrative remedies through "machination, misrepresentation, or intimidation." *Id*.

Plaintiff argues that the administrative grievance process reached a dead end before he initiated the formal grievance process at all. This was due to the fact that he received no response to his BP-8 or his email to the warden. The Court finds this argument unavailing.

The BOP's Administrative Grievance Program offers guidance for such situations. In no uncertain terms, it states that an inmate "may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18. In other words, Plaintiff could have, and should have, proceeded

7

to the next step of the grievance process.  He could have requested a BP-9, BP-10, and then a BP-11.  He makes no assertion that his efforts were thwarted by prison officials or that the process was simply too confusing to navigate.  Plaintiff instead attempted to streamline the process.  In doing so, he cut short any possibility of internal resolution of this matter.

This is not a case where the administrative remedies process was unavailable.  This is a case where the Plaintiff simply failed to take the steps necessary and available to get the administrative wheels turning.

CONCLUSION

The Clerk's Office is **DIRECTED** to **SUBSTITUTE** Defendant **MR. VANNOY** in place of **MR. VANORD** in CM/ECF.

For the reasons set forth herein, Defendants' Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Doc. 31) is **GRANTED**.  **COUNTS 2** and **3** are **DISMISSED** without prejudice.  Because no other claims remain pending, this action is **DISMISSED**, and Defendants' Motion to Dismiss (Doc. 29) is **DISMISSED** as **MOOT**.

The Clerk is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED**.

**DATED: 8/25/2020**                    s/J. Phil Gilbert
                                        **J. PHIL GILBERT**
                                        **United States District Judge**